Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Wednesday, January 06, 2010 3:34:56 PM

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| PAT J. HERLAN, WV REAL ESTATE ) | Case No. 09-2665 |
| BROKER, INC., ) | |
| ) | |
| Debtor. ) | Chapter 11 |

### MEMORANDUM OPINION

Timberline Four Seasons Resort, Inc. ("Timberline Four Seasons"), requests an immediate turnover of 73 vacation home management contracts currently in the possession of Pat J. Herlan, WV Real Estate Broker, Inc. (the "Debtor"), under 11 U.S.C. § 541(d) on the grounds that Timberline Four Seasons is the equitable owner of those contracts and the only duty of the Debtor's bankruptcy estate, as the legal title holder, is to turnover those contracts to it.

For the reasons stated herein, the court will order that the contracts be immediately turned over to Timberline Four Seasons.

### BACKGROUND

Timberline Four Seasons is a family-owned, four seasons resort. It has a real estate division that sells and promotes properties, and manages homeowners' properties that are for rent. In 1991, it hired Pat Herlan to provide real estate brokerage services. Timberline Four Seasons did not otherwise have a licensed real estate broker as an owner or officer; thus, it could not have engaged in the business of real estate brokerage without a broker's assistance.

On January 3, 2007, Timberline Four Seasons terminated Ms. Herlan's employment, and demanded that she turnover all of her brokerage business, books and records to another real estate brokerage, Long Run Realty, that is wholly owned by a principal of Timberline Four Seasons. By agreement, Ms. Herlan had until June 30, 2007 to vacate Timberline Four Seasons's place of

1

business and turnover all property.[1]

Upon her departure, Ms. Herlan removed certain business records that Timberline Four Seasons claims are vital to the continued operation of its real estate division. These records included sales listing agreements, vacation home rental contracts, future reservation lists, and Ms. Herlan's trust accounts.

Concerned about the loss of its property, on June 24, 2007, Timberline Four Seasons filed a Petition for Injunctive Relief in the Circuit Court of Tucker County, West Virginia. Following a trial, the Circuit Court entered its Findings of Fact and Conclusions of Law on July 6, 2007, and denied the petition for injunctive relief.

On June 9, 2009, the Supreme Court of Appeals of West Virginia reversed, determining that Pat Herlan was an agent of Timberline Four Seasons. *Timberline Four Seasons Resort Mgmt. Co. v. Herlan*, 679 S.E.2d 329 (W. Va. 2009). Based on the agency relationship, the Supreme Court of Appeals reasoned that Pat Herlan is held to the utmost good faith, and would not be allowed to use Timberline Four Seasons's property for her own advantage, or to derive secret profits or advantages to herself by reason of the relation of principal and agent. Because the business records – including the 2007 vacation home rental contracts – were primarily obtained pursuant to Ms. Herlan's agency relationship with Timberline Four Seasons, the Supreme Court of Appeals directed the Circuit Court to enter an order granting Timberline Four Seasons's request for injunctive relief, which called for, among other things, a turnover of the vacation home rental contracts.

The vacation home rental contracts themselves are in the names of the individual homeowners and the Management Company, "Timberline Resort Realty, a West Virginia Company."[2] Ms. Herlan, individually, signed each contract as broker for the Management Company. Sometime in 2000, Ms. Herlan had incorporated Timberline Resort Realty, Inc., but she unilaterally transferred all contracts held by that entity to the Debtor before filing her personal bankruptcy on

---

[1] Ms. Herlan contends that, initially, problems existed with turning over the business records to Timberline Four Seasons, or a related entity, until such time as it employed another broker.

[2] The individual vacation home rental contracts are filed with the court at Document Nos. 57-69, and were made exhibits at the evidentiary hearing held on December 17, 2009.

November 16, 2009. As of October 2009, Timberline Resort Realty, Inc., is a company owned and controlled by one or more principals of Timberline Four Seasons.

On remand to the Circuit Court of Tucker County, the Circuit Court entered an order on October 6, 2009, that required, among other things, Ms. Herlan to turnover the vacation home rental contracts "with lessors who were customers of Timberline in June 2007, and that are currently in the name of Pat J. Herlan, and/or Timberline Realty, Inc., and/or Timberline Resort Realty, Inc., and/or Almost Heaven West Virginia Realty, and/or any Herlan associate. . . ." Ms. Herlan, however, refused to turnover any of the current contracts on the grounds that – while Timberline Four Seasons could have all the expired 2007-08 rental contracts – the individual homeowners had executed "new" contracts for the 2008-09 and 2009-10 rental periods and these "new" contracts did not belong to Timberline Four Seasons.

Ms. Herlan filed an individual Chapter 7 bankruptcy petition on November 16, 2009,[3] and filed a Chapter 11 bankruptcy petition for the Debtor on November 23, 2009.

## DISCUSSION

Timberline Four Seasons contends that Ms. Herlan is conclusively presumed to be its agent under the Supreme Court of Appeals of West Virginia's determination;[4] therefore, as its agent, Ms. Herlan only has legal title to the vacation home rental contracts. In addition to contesting Timberline Four Seasons's equitable title, the Debtor raises a number of defenses: (1) Long Run Realty is the only party that has the ability to request turnover under 11 U.S.C. § 541(d) and its is not a party to the turnover motion; (2) contracts for the 2009-10 rental period did not exist in 2007; thus, no vacation home rental contracts currently exist to turnover; and (3) the vacation home rental contracts are personal service contracts that cannot be assumed or assigned without the homeowners' consent. Several homeowners also testified that they did not consent to have their vacation home rental

---

[3] Ms. Herlan filed a motion to convert her Chapter 7 case to one under Chapter 11 on December 30, 2009.

[4] The court recognizes that Ms. Herlan disputes that she is the agent of Timberline Four Seasons. The Supreme Court of Appeals of West Virginia, however, found otherwise, and Ms. Herlan is precluded from litigating that issue again in this court. *E.g.*, *Sartin v. Macik*, 535 F.3d 284 (4th Cir. 2008) (discussing the application of issue preclusion in bankruptcy proceedings initiated after a final state court judgment).

3

contracts "transferred" to Timberline Four Seasons and that they wanted the Debtor to continue to perform services under their respective contracts.

### A.     Amendment of the Turnover Motion to Add Long Run Realty as a Moving Party

The Debtor contends that, under West Virginia law, the vacation home rental contracts can only be turned over to a licensed real estate broker.  Timberline Four Seasons, the named moving party, has no licensed real estate broker.  Instead, Tom Blandzy, a principal of Timberline Four Seasons, incorporated Long Run Realty, Inc., which is associated with Kim Landis, a broker, to hold the vacation home rental contracts.  In the Debtor's view, Long Run Realty is not a moving party and therefore no grounds exist for the court to order the turnover of the vacation home rental contracts to Timberline Four Seasons.

At the close of Timberline Four Seasons's case-in-chief on December 17, 2009, the Debtor raised, for the first time, the standing of Timberline Four Seasons to obtain the relief it had requested.  To the extent that there was any defect in the moving party, Timberline Four Seasons orally moved to amend its turnover motion to add Long Run Realty as a moving party.

In bankruptcy proceedings, motion practice is governed by Fed. R. Bankr. P. 9014.  That Rule incorporates into motion practice many of the Bankruptcy Rules that are applicable to adversary proceedings, which themselves incorporate many of the Federal Rules of Civil Procedure.  Rule 15 of the Civil Rules, Fed. R. Bankr. P. 7015, governing the amendment of pleadings is not specifically applicable to motion practice; however, Fed. R. Bank. P. 9014(c) states that "[t]he court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply."  Rule 15(b) permits pleadings to be "freely" amended when the amendment "will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits."

Here, Long Run Realty was a movant before the Supreme Court of Appeals of West Virginia when the Court remanded the case for entry of an injunction granting turnover of the vacation home rental contracts, the principals of the two companies overlap, and this court finds that no unfair surprise would result to the Debtor by amending the turnover motion to include Long Run Realty as a moving party. Finding no prejudice to the Debtor by adding Long Run Realty as a party plaintiff, the court will order that Fed. R. Bankr. P. 7015 be made applicable to this contested matter under

4

Fed. R. Bankr. P. 9014, and will grant the oral motion of Timberline Four Seasons to add Long Run Realty as a moving party in its motion for turnover under 11 U.S.C. § 541(d). *See, e.g.*, *HOH Co. v. Travelers Indem. Co.*, 903 F.2d 8, 14 n.8 (D.C. Cir. 1990) (allowing the pleadings to be amended to add a party plaintiff).

**B.     Equitable and Legal Title to the 2007-08 Vacation Home Rental Contracts**

As its employee/agent, Timberline Four Seasons states that Ms. Herlan only had legal title to the 2007-08 vacation home rental contracts and that legal title is all that the Debtor was capable of obtaining. To the extent that the 2007-08 contracts have any viability after their expiration, the Debtor contends that its bankruptcy estate, by way of the powers granted to it by the Bankruptcy Code, acquired greater rights in the vacation home rental contracts than Ms. Herlan possessed such that it is more than a mere legal title holder.

As a matter of West Virginia law, an agent holding property belonging to the agent's principal only holds legal title to that property and equitable title is held by the principal. *E.g.*, *Cleavenger v. Felton*, 33 S.E. 117 (W. Va. 1899) (stating that an agent holding title to real property for the principal has no equitable ownership rights in the real property). When an agent wrongfully retains the principal's property, a constructive trust is imposed such that the property must be returned to its rightful owner. *E.g.*, *Annon v. Lucas,* 185 S.E.2d 343, 352-53 (W. Va. 1971) ("[W]henever the legal title to property . . . has been obtained through . . . circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same . . . ."); *Johnson's Ex'rs v. Johnson's Heirs*, 98 S.E. 812 (W. Va. 1919) ("[A] principal who furnishes money to an agent with which to buy land for him, and the agent invests it in land and takes title to himself. There a constructive trust arises in favor of the principal."). Likewise, constructive trusts can be imposed to prevent unjust enrichment of an agent at the expense of a principal. *E.g.*, *St. Clair v. St. Clair*, 273 S.E.2d 352, 355 (W. Va. 1980) ("To invoke the law of restitution or unjust enrichment to impose a constructive trust upon property of another, it is necessary that it be shown that one party has been unjustly enriched."); *Restatement (First) of Restitution* § 160 (1937) ("Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were

5

permitted to retain it, a constructive trust arises.").

In this case, Ms. Herlan, an agent/employee of Timberline Four Seasons, owed Timberline Four Seasons a fiduciary duty to hold the vacation home rental contracts for its benefit. Allowing Ms. Herlan to profit from a breach of her fiduciary duty as an agent of Timberline Four Seasons would result in her unjust enrichment. Therefore, under West Virginia law, as recognized by the Supreme Court of Appeals of West Virginia in this case, Ms. Herlan is obligated to turnover the 2007-08 vacation home rental contracts to Timberline Four Seasons and/or Long Run Realty.[5]

Of course, Ms. Herlan asserts that she no longer has title to the 73 vacation home rental contracts at issue because – to the extent those contracts still exist – she transferred them to the Debtor before it filed bankruptcy. The contracts, therefore, are not in her possession, but constitute property of the Debtor's bankruptcy estate.

As a general matter, property of a debtor's bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). What constitutes property of the estate is to be interpreted broadly. *United States v. Whiting Pools*, 462 U.S. 198, 204-05 (1983). "In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law." *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992). Thus, unless some federal interest requires a different result, property interests in bankruptcy are to be analyzed under applicable state law to "reduce uncertainty, discourage forum shopping, and to prevent a party from receiving a windfall merely by reasons of the happenstance of bankruptcy." *Butner v. United States*, 440 U.S. 48, 55 (1979); *see also Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 329 (1993) ("In the absence of a controlling federal rule, we generally assume that Congress has left the determination of property rights in the assets of a bankrupt's estate to state law, since such

---

[5] The Debtor asserted at the hearing that Timberline Four Seasons has a remedy at law for damages and therefore no basis exists to employ an unjust enrichment theory for recovery of the contracts. In *Annon v. Lucas*, 185 S.E.2d 343, 352 (W. Va. 1971), however, the Court stated that "[t]he availability of a constructive trust as a mode of relief against unjust enrichment is not, in general, affected by the fact that the plaintiff has a cause of action at law, as distinguished from equity, for damages or other relief." Therefore, even assuming that Timberline Four Seasons has an adequate remedy at law, that is not a bar from asserting a constructive trust / unjust enrichment theory to compel turnover of the vacation home rental contracts under 11 U.S.C. § 541(d).

6

property interests are created and defined by state law."). Consequently, once a property interest has passed to the estate, it is generally subject to the same limitations imposed by applicable non-bankruptcy law. *In re FCX, Inc.*, 853 F.2d 1149, 1153 (4th Cir. 1988) ("The estate under § 541(a) succeeds only to those interests that the debtor had in property prior to commencement of the bankruptcy case."). In short, in the absence of a contrary federal interest, if a debtor's rights to certain property are limited by applicable state law, so too are the rights of the debtor's bankruptcy estate.

In this case, based on the analysis of the Supreme Court of Appeals of West Virginia, Ms. Herlan only had legal title to the 2007-08 vacation home rental contracts as Timberline Four Seasons's agent. The Debtor never acquired any other right to those contracts other than that enjoyed by Ms. Herlan. For instance, there is no evidence that any consideration was paid by the Debtor to Ms. Herlan for the benefit of the contrats. As such, the Debtor only acquired Ms. Herlan's legal title – not equitable title – to the contracts and the Debtor is in no way an actual, bona fide purchaser for value of the 2007-08 vacation home rental contracts. In short, nothing about the acquisition of the vacation home rental contracts by the Debtor's bankruptcy estate gave the Debtor a greater right, title, or interest in the contracts than that enjoyed by Ms. Herlan.

Notwithstanding the result of applicable non-bankruptcy law, the Debtor asserts that the bankruptcy estate is a different entity, with different powers from Ms. Herlan as an individual. Namely, under 11 U.S.C. § 544(a),[6] the Debtor has the powers of a judicial lien creditor and a bona

---

[6] That subsection provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--
    (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
    (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

7

fide purchaser of real property as of the petition date. The Debtor asserts that these powers trump the equitable rights of Timberline Four Seasons to the vacation home rental contracts.

Contrary to the Debtor's argument, § 544(a)(3) is not applicable to this case because it only applies in cases of real property – not personal property such as the contracts at issue in this case. Also, under § 544(a)(1) and (2), West Virginia law already provides that the rights of a subsequent judgment lien creditor do not trump the rights of a constructive trust beneficiary such that the judgment lien creditor may claim equitable title to the disputed property. *E.g.*, *Cleavenger v. Felton*, 33 S.E. 117 (W. Va. 1899) ("When statute enactments do not interfere, a judgment creditor can acquire no better right to the estate of a debtor that the debtor himself has when the judgment is recovered. He takes it subject to every liability under which the debtor held it, and subject to all the equities which exist in favor of third parties; and a court of equity will limit the lien of the judgment to the actual interest which the debtor has in the estate . . . ."); *accord*, *In re DVI, Inc.*, 306 B.R. 496, 503 (Bankr. D. Del. 2004) ("The rights of a hypothetical judicial lienholder do not prevail over an equitable interest holder . . . the rights of a judicial lien holder are not equivalent to those of an innocent purchaser for value."); *Enter. Leasing Co. of Norfolk/Richmond v. Mepco, Inc. (In re Mepco, Inc.)*, 276 B.R. 94, 104 (Bankr. W.D. Va. 2001) (holding that under Virginia law, a beneficiary of a constructive trust would have priority over the trustee's status as a judgment creditor when the wrong occurred before the petition date); *In re Storage Technology Corp.*, 55 B.R. 479, 484 (Bankr. D. Colo. 1985) ("The law is clear in Colorado that, with regard to [personal property], a beneficiary of a constructive trust or other equitable lien prevails over a judicial lien creditor."); *see also Mid-Atlantic Supply, Inc. v. Three Rivers Aluminum Co.*, 790 F.2d 1121 (4th Cir. 1986) (recognizing that the rights of a constructive trust beneficiary under § 541(d) takes priority over a

---

> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544.

bank's security interest in personal property under Virginia law).[7]

Consequently, the court concludes that all the Debtor's bankruptcy estate obtained from the Debtor is the legal title to the 2007-08 vacation home rental contracts.  Those contracts are subject to a constructive trust in favor of Timberline because, as recognized by the Supreme Court of Appeals of West Virginia, they were primarily obtained by Ms. Herlan while she was an agent/employee of Timberline Four Seasons.  Because the trust property is now in the hands of the Debtor, Timberline Four Seasons may follow the property into the Debtor's hands; this "'trust pursuit rule' permits a true owner of wrongfully converted property to follow it into a subsequent possessor's hands." 76 Am. Jur. 2d *Trusts* § 275 (2008).   Under 11 U.S.C. § 541(d), the Debtor's only duty with regard to the contracts is to turn them over to Timberline Four Seasons as the constructive trust beneficiary.

**C.     Imposition of Constructive Trust on 2009-10 Contracts**

The Debtor asserts that it is willing, and has, turned over all contracts from the 2007-08 rental period that the Supreme Court of Appeals of West Virginia recognized to be the property of Timberline Four Seasons.  In the Debtor's view, the current 2009-10 rental period contracts are new contracts not subject to the Supreme Court of Appeals's determination.  Timberline Four Seasons contends that the current contracts are the "fruit of the poisonous tree" such that they too should be returned to it as equitable owner.

Although all the contracts existing in 2007 – when Ms. Herlan was Timberline Four Seasons's agent – have expired, the purpose of the imposition of a constructive trust is to prevent unjust enrichment.  *Restatement (First) of Restitution* § 160 cmt. (a) (1937) ("A constructive trust . . . is imposed as a remedy to prevent unjust enrichment.").  That is, the purpose "is to restore to the

---

[7] The court recognizes authority such as *XL/Datacomp v. Wilson (In re Omegas Group)*, 16 F.3d 1443 (6th Cir. 1994), that is critical of the application of constructive trusts in bankruptcy proceedings.  In the Fourth Circuit, however, constructive trusts in bankruptcy under 11 U.S.C. § 541(d) are accepted, *Mid-Atlantic Supply, Inc. v. Three Rivers Aluminum Co.*, 790 F.2d 1121 (4th Cir. 1986), and until such time as the law in this Circuit changes, the court will continue to apply the constructive trust doctrine in bankruptcy cases.  *E.g.*, *Old Republic Nat'l Title Ins. Co. v. Tyler (in Re Dameron)*, 206 B.R. 394  (Bankr. E.D. Va. 1997) (finding no reason to abrogate the constructive trust doctrine under § 541(d) after *Omegas*), *aff'd on other grounds*, 155 F.3d 718 (4th Cir. 1998).

plaintiff property of which he has been unjustly deprived and to take from the defendant property the retention of which by him would result in a corresponding unjust enrichment of the defendant; in other words the effect is to prevent a loss to the plaintiff and a corresponding gain to the defendant, and to put each of them in the position in which he was before the defendant acquired the property." *Id.* at cmt. (d). Thus, not only the property, but profits from the property are subject to being surrendered. *Id.*

In this case, Ms. Herlan's practice was to have the homeowner sign a renewal contract before the previous contract had expired. As additional incentive to quickly sign a renewal contract, Ms. Herlan told the homeowner that she could delay final payment to the homeowner on the homeowner's vacation rental for up to 60 days, but the homeowner would receive immediate payment once the renewal contract was signed.

In addition, W. Va. Code § 30-40-19(a)(15) explicitly prohibits a licensee under the West Virginia Real Estate License Act to induce "any person to a contract to break the contract for the purpose of substituting a new contract with a third party." Under this statute, Timberline Four Seasons and/or Long Run Realty believed that they were prohibited from independently contacting the homeowners and soliciting their business following the 2007-08 rental period unless they had learned that the homeowner had voluntarily terminated the contract with Ms. Herlan, or refused to renew for the following rental year period. Neither Timberline Four Seasons nor Long Run Realty had any independent method of obtaining this information.

Under these conditions, the court finds that the vacation home rental contracts never became competitive such that Timberline Four Seasons could independently solicit business from the homeowners. Additionally, the court finds that all 73 vacation rental contracts at issue were first executed when Ms. Herlan was an agent of Timberline Four Seasons, and the annual renewal of those contracts with Ms. Herlan would not likely have happened in the absence of the original agency. As such, the court finds that the annual renewal contracts are profits from the contracts existing in 2007, allowing the Debtor to keep these contracts would result in its unjust enrichment from the original wrongful act of Ms. Herlan, and to prevent further unjust enrichment, the 2009-10 vacation home rental contracts must be turned over to Timberline Four Seasons and/or Long Run Realty.

In sum, turnover of the 2009-10 vacation home rental contracts is the most effective method of restoring to Timberline Four Seasons and/or Long Run Realty the property that they were deprived of in 2007, and to put Ms. Herlan, the Debtor, Timberline Four Seasons, and/or Long Run Realty in the same position as the parties were in before Ms. Herlan wrongfully took the 2007 contracts. *See, e.g.*, *Bank of America v. Ryan*, 207 Cal. App. 2d 698 (Cal Ct. App. 1962) (stating that if a constructive trust is to be imposed on money and other property, the beneficiary thereof is entitled to recover rents, income, and profits on such property); *Ryan v. Plath*, 140 P.2d 968 (Wash. 1943) (stating that a constructive trustee may be compelled to convey or assign corpus of trust property and to account for and pay over rents, profits, issues, and income which constructive trustee has actually received or, in general, which he might by exercise of reasonable care and diligence have received); 76 Am. Jur. 2d *Trusts* § 275 (2008) ("Once a constructive trust is imposed the trust property or funds will be followed into the proceeds or product of the trust property in order that the beneficiary might recover such proceeds or product, including any profit or increase in value of such proceeds or product over the original trust property.").

**D.   Personal Service Contracts**

According to the Debtor, the vacation home rental contracts are a type of personal service contract, which cannot be assumed or assigned under 11 U.S.C. § 365(c)(1) absent the consent of the homeowner. The Debtor contends that the homeowners do not consent to any of the vacation home rental contracts being "transferred" to Timberline Four Seasons or Long Run Realty, and several of the homeowners appeared at the December 17, 2009 hearing to voice their opposition to any anticipated "transfer."[8]

A personal services contract has been defined as "[a] contract which contemplates the performance of personal services involving the exercise of special knowledge, judgment, taste, skill, or ability." *In re Compass Van & Storage Co.*, 65 B.R. 1007, 1011 (Bankr. E.D.N.Y. 1986); *see also Escandar v. S. Mgmt. and Inv. Corp.*, 534 So. 2d 1203, 1205 n.2 (Fla. Ct. App. 1988) ("[C]orporate responsibility which can be performed by anyone within the corporation" is not a personal service

---

[8] The court also notes that it is the individual homeowners that have the right to assert that the vacation home rental contracts are personal service contracts that cannot be assigned – not the Debtor – inasmuch as they are the recipients of the alleged personal services.

11

contract and may be assigned); *see also* W. Va. Code § 46-2-210 (delegation of duties); *Restatement (Second) Contracts*, § 318 (1981) (same). Typical personal services contracts include "a contract to paint a portrait, write a novel, or perform other work requiring 'rare genius' and 'extraordinary skill.'" *Mehul's Inv. Corp. v. ABC Advisors, Inc.*, 130 F. Supp. 2d 700, 705 (D. Md. 2001).

In this case, the vacation home rental contracts are in the name of Timberline Resort Realty – not in the name of Ms. Herlan, who only signed the contract as a broker. Nothing in the vacation home rental contract makes the personal services of Ms. Herlan a condition of performance. Much of the actual work done under the contract is performed by Ms. Herlan's staff, at least one of whom, Allison Maddox, currently works for Long Run Realty. While the court recognizes that many homeowners are particularly impressed with Ms. Herlan's marketing, service, and ability to find "quality" renters for their units, exceptional service and marketing do not turn an ordinary business contract into a personal service contract. The vacation home rental contracts in this case are simply devoid of language that specifically contemplates the special knowledge, judgment, taste, skill, or ability of Ms. Herlan as a condition of performance.[9] The court is not convinced that managing vacation home rentals requires "rare genius" or "extraordinary skill." No case cited by Ms. Herlan demonstrates that the particular nature of a vacation home rental contract classifies it as a personal services contract. *See Del. CWC Liquidation Corp. v. Martin*, 584 S.E.2d 473 (W. Va. 2003) (attorney malpractice claims are personal and not assignable under West Virginia law); *Kelley v. Thompson Land Co.*, 164 S.E. 667 (W. Va. 1932) (formation of a going corporation "is essentially a personal matter requiring personal experience, ability, skill and judgment of the promoter. . . . [T]he parties relied wholly on Thompson to form and finance the intended corporation and upon his continued cooperation and supervision to make it a success. The consideration at the foundation of the contracts in question was distinctly personal. There is nothing whatever to indicate that a proxy or a 'substitute service' for that of Thompson was ever thought of."); *MNC Credit Corp. v. Sickels*, 497 S.E.2d 331 (Va. 1998) ("The common law of this Commonwealth did not permit the assignment of legal malpractice claims. At common law, contracts for legal services were not assignable because

---

[9] The Debtor did state that only 12% of the renters for the vacation homes are repeat customers; thus, obtaining renters for the vacation homes requires constant, extensive marketing. The court fails to see, however, how the need for marketing of vacation homes to consumers turns the vacation home rental contracts with the homeowner into a personal service contract.

of the fiduciary duties inherent in the attorney-client relationship.").

Consequently, the court does not believe that the vacation home rental contracts at issue in this case are personal service contracts, and it finds no impediment to recognizing the imposition of a constructive trust on the contracts in favor of Timberline Four Seasons. Moreover, the court notes that under 11 U.S.C. § 365(c)(1) it is not assuming or assigning any contract, and is not transferring any contract. The court is merely recognizing that the vacation home rental contracts were the property of Timberline Four Seasons when Ms. Herlan took those contracts and when they came into the possession of the Debtor. By recognizing Timberline Four Seasons's equitable ownership rights in the contracts, it is merely unwinding an unlawful transfer and returning the contracts to the rightful owner.

### E.   Desire of Homeowners to Have the Debtor Continue to Service their Contracts

Several homeowner parties to the vacation home rental contracts appeared at the December 17, 2009 hearing to protest the possibility that someone other than Pat Herlan or her related company may be servicing their individual contracts.[10] In their view, they have trust in Ms. Herlan, her judgment, her staff, and in her ability to solicit quality renters for their homes through her extensive marketing campaigns. They do not similarly trust Timberline Four Seasons / Long Run Realty and worry that those entities have a lesser ability to perform under their vacation home rental contracts.

The court recognizes the desires of certain homeowners to retain the services of Ms. Herlan and her staff, though whatever entity Ms. Herlan is associated with. To that end, the court notes that each of the 73 contracts in this case have an identical termination provision whereby the contract "may be cancelled by either party 90 DAYS after written letter of cancellation is received in the Timberline Resort Realty office . . . ." The court also notes that it is not forcing any homeowner to contract with Timberline Four Seasons or Long Run Realty, and it is not interfering with the individual homeowners' freedom of contract. The court is merely recognizing that for the 2007-08 rental period, the homeowners were doing business with Timberline Four Seasons as the principal of Ms. Herlan, that Ms. Herlan breached her fiduciary, agency obligations to her principal, and that

---

[10] Homeowners Timothy McClain, Stephen Halfill, and Charles Barnes testified that they wanted no business dealings with Timberline Four Seasons / Long Run Realty and that it was important to them that Pat Herlan, or her associated businesses, continue to service their vacation home rental contracts.

13

the profits of that wrongdoing – the 2009-10 vacation rental contracts – must be returned to their rightful owner.

## CONCLUSION

Under 11 U.S.C. § 541(a), the bankruptcy consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." Section 541(d), however, clarifies that this language of subsection (a) does not include property that the debtor does not hold in his own right: "property in which the debtor holds . . . only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." As recognized in the Senate Report, this means that a bankruptcy trustee "could take no greater rights than the debtor himself had [in the trust property]." S. Rep. No. 989, 95th Cong., 2d Sess. 82, reprinted in 1978 U.S. Code Cong. & Ad. News, 5787, 5868. Accordingly, when a debtor's wrongful conduct gives rise to a constructive trust, the debtor holds only bare legal title to the disputed property, subject to a duty to reconvey it to the rightful owner, and the bankruptcy estate holds the property subject to the same restrictions.

Because the court has found the 2009-10 vacation home rental contracts in this case are subject to a constructive trust in favor of Timberline Four Seasons and/or Long Run Realty, the court will enter a separate order pursuant to Fed. R. Bankr. P. 9021 that grants Timberline Four Seasons's motion for their turnover under 11 U.S.C. § 541(d) of the Bankruptcy Code.