IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| PAT J. HERLAN, WV REAL ESTATE ) | Case No. 09-2665 |
| BROKER, INC., ) | |
| ) | |
| Debtor. ) | Chapter 11 |

**MEMORANDUM OPINION**

Timberline Four Seasons Resorts, Inc. ("Timberline"), and Long Run Realty, Inc. ("Long Run"), request that this court hold Pat J. Herlan, WV Real Estate Broker, Inc. (the "Debtor"), in contempt of this court's order of January 6, 2010, as clarified by the court on January 29, 2010. Specifically, Timberline and Long Run complain that the Debtor has failed to turnover 39 vacation home rental contracts, the keys to those properties, and associated rental information concerning the individual vacation homes. The Debtor states that it is not in contempt of this court's orders on the basis that the individual homeowners for each of the 39 properties have terminated their contracts; thus, nothing exists to turnover.

For the reasons stated herein, the court concludes that Timberline and/or Long Run has failed to demonstrate contempt by clear and convincing evidence.

**I. BACKGROUND**

The relevant facts of this case are set forth in the court's Memorandum Opinion of January 6, 2006, and will not be repeated here. *In re Herlan*, No. 09-2665, 2010 Bankr. LEXIS 7 (Bankr. N.D.W. Va. Jan. 6, 2010). As a result of the court's decision, it granted the motion of Timberline and/or Long Run pursuant to 11 U.S.C. § 541(d) to turn over what the court believed to be 72 vacation home rental contracts to Timberline and/or Long Run on the basis that the Debtor held mere legal title to those contracts and Timberline and/or Long Run held the equitable interest in those

1

contracts. The court's conclusion was based on a decision by the Supreme Court of Appeals of West Virginia that determined that Pat Herlan was an agent of Timberline when the contracts came into existence, and she wrongfully took those contracts with her when Timberline terminated her agency relationship. *Timberline Four Seasons Resort Mgmt. Co. v. Herlan*, 679 S.E.2d 329 (W. Va. 2009).

Before Ms. Herlan filed her personal bankruptcy on November 16, 2009, she transferred all the vacation home rental contacts to the Debtor. The Debtor filed this Chapter 11 case on November 23, 2009.

This court imposed a constructive trust on those contracts that Ms. Herlan took when she left Timberline, and that were still in existence through annual renewal contracts, when the court entered its January 6, 2010 order. Because the parties disputed what the court intended when it "granted" the motion of Timberline and/or Long Run to turnover the vacation home rental contracts, the court clarified its January 6, 2010 order on January 29, 2010. Pursuant to that order the Debtor was obligated to turnover the following items:

> All homeowner contracts, customer (renter) information, banking and accounting records, mailing and marketing lists, vendor records and information, and all the historical records of account, including all computer records of any nature. All rental contracts with lessors who were the customers of lessors of Timberline in June 2007, and that are currently in the name of Pat J. Herlan, and/or Timberline Realty, Inc. and/or Timberline Resort Realty, Inc. and/or Almost Heaven West Virginia Realty and/or any Herlan associate, along with any deposits accompanying said contracts for the 2009-10 season currently deposited in account and all contracts currently had with renters for the 2009-10 ski season to which the deposits attach, and all keys and or other items necessary to grant Timberline Four Seasons and/or Long Run Realty access to such units.

(Document No. 105).

The Debtor unsuccessfully sought a stay of this court's order pending appeal in both this court and in the district court. In arguing for the imposition of a stay, the Debtor contended that there were 64 vacation home contracts remaining by the time of the hearing on January 27, 2010 – not 72 – and if the Debtor lost those 64 contracts it would suffer severe economic harm. At hearing on the motion to stay, the Debtor never mentioned that it believed 39 of the 64 contracts would be

2

terminated by the end of the month or soon thereafter.[1]

Following a denial of the Debtor's motion to stay in the district court on February 16, 2010, Timberline and/or Long Run requested delivery of its contracts. On February 18, 2010, the Debtor partially complied by delivering 25 of the 64 contracts, but it contended that the remaining 39 had been terminated by the contract counter parties. In support of this contention, the Debtor submitted the letters from homeowners – which Ms. Herlan swore under oath that she had no part in soliciting – that purport to either terminate the contract based on a 90-day no-fault provision, or a 30-day default provision. Ms. Herlan stated that she construed the 30-day default notices to be 90-day no-fault termination notices because she did not believe that the Debtor was in default under the contracts. In any event, the 90-day period had expired by the time the district court had denied the Debtor's request for a stay pending an appeal of this court's January 6, 2010 order.

## II. DISCUSSION

On February 19, 2010, Timberline and/or Long Run filed a motion for contempt arguing that the Debtor's failure to turnover 39 vacation home rental contracts violated this court's order of January 6, 2010, as clarified on January 29, 2010.

To establish civil contempt, a party must show, by clear and convincing evidence:

(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . .. that the decree was in the movant's "favor"; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (quoting *Colonial Williamsburg Found. v. The Kittinger Co.*, 792 F. Supp. 1397, 1405-6 (E.D. Va. 1992), *aff'd*, 38 F.3d 133, 136 (4th Cir.

---

[1] The Debtor could have, and should have, brought this termination issue to the court's attention in conjunction with one or both of the hearings that were conducted by the court on December 17, 2009 and January 27, 2009. The fact that it did not is disturbing to the court. By waiting to raise the issue until after the compliance date of February 18, 2010, the Debtor generated the need for judicial intervention that, perhaps, could have been avoided. The court is also very concerned that, despite the recent claims of termination, the Debtor, when it was to its advantage at the hearing to stay the court's January 6, 2010 decision, treated the contracts as alive and well and not subject to imminent termination.

1994)).

In this case, elements 1, 2, are met by clear and convincing evidence. The Debtor had actual knowledge of the court's orders of January 6, 2010 and January 29, 2010, having appeared at the hearings to contest entry of those orders, and those orders celarly were granted on terms favorable to Timberline and Long Run.

However, for Timberline and/or Long Run to be harmed, the Debtor argues, they must have been deprived of the benefit of an existing contract. Considering its view that none of the 39 vacation home rental contracts existed following the district court's decision to deny a stay pending appeal, the Debtor asserts that Timberline and/or Long Run could not be harmed by failing to turnover non-existent contracts. The Debtor claims that it complied with the court's orders by turning over a copy of the contract along with the homeowner's termination/cancellation notice.

Each of the homeowner vacation home rental contracts have identical provisions that detail termination and/or cancellation:

> 1. This agreement will run from **May 1st, 2009 until April 30th, 2010**, and replaces all prior Rental Agreements for this unit. This contract may be cancelled by either party 90 DAYS after written letter of cancellation is received in the Timberline Resort Realty Office . . . .
>
> . . . .
>
> 26. **Default:** In the event either party defaults in the performance of any of its obligations under this Agreement, in addition to any other remedies provided herein or by applicable law . . . the non-defaulting party shall have the right to terminate this Agreement if within 30 days after providing the defaulting party with notice of the default and the intent to terminate, the default remains uncured.

(Ex. 1).

To varying degrees, the exhibits submitted by the Debtor purporting to be contract termination notices reference Paragraph 1, Paragraph 26, both, or just state that the homeowner desires to terminate and/or cancel the vacation home rental contract. (Exhibit 2). Importantly, none of the homeowner parties are before the court. The homeowners are indispensable in adjudicating any contract termination rights between them and Timberline and/or Long Run, and the court is not, and cannot, adjudicate contract rights between Timberline and the homeowners when those homeowners are not party to this litigation. Based on the court's earlier ruling, however, the

4

contractual rights and obligations of the rental management company belong to Timberline and/or Long Run; the Debtor is the interloper, and it is not for it to decide what constitutes a termination on behalf of Timberline and/or Long Run.

For its part, Timberline and/or Long Run argues that the purported cancellations or terminations are "absurd" on the grounds that, at the time they were given, the Debtor was administering the contracts. In its view, "Timberline had no contractual relationship with these homeowners that could be 'cancelled.'" Timberline's argument, however, is contrary to the court's holding that Timberline and/or Long Run was, at all times, the equitable owner of the rental manager's rights and obligations under the contracts. Accordingly, any notice of termination or cancellation, validly given, would be effective against Timberline even though the contracts were still in the physical possession of the Debtor. Therefore, as the true counter party to the contracts, Timberline would be bound by any valid notice of termination/cancellation.[2]

Consequently, the court will afford Timberline a period of ten days after entry of this Memorandum Opinion and accompanying order to review the 39 purported termination/default notices to decide if it will honor them. As soon as Timberline and/or Long Run has completed its review, it is to supply the list of contracts it believes are still in existence and the Debtor must then turnover the original contract, any keys still in its possession, the rental history information for the individual vacation home, and any associated rental contracts for that vacation home. The court has already determined that Timberline and/or Long Run is the equitable owner of the rights and obligations of the rental management company under the contracts, and compelling turnover is no

---

[2] Ms. Herlan, on behalf of the Debtor, swore that she had no part in instigating the purported cancellation/termination of the 39 vacation home rental contracts. The extent to which, if any, Ms. Herlan may have interfered with Timberline's and/or Long Run's rights under the contracts is not before the court at this time.

Ms. Herlan's counsel did indicate that Ms. Herlan had executed new contracts with at least some of homeowners who had submitted the cancellation/termination notices. It is not clear to the court when these new contracts were executed, or how many were executed. Consequently, the court will order that the Debtor file a list regarding the 39 contracts at issue and state whether the Debtor executed a new contract with any of the homeowners relevant to those contracts, provide the date that any new contract was executed, and file a copy of the new contract with the court.

more than recognizing this equitable right.[3]

### III. CONCLUSION

Importantly, the only parties before the court are the Debtor and Timberline / Long Run. No homeowner counter party to the vacation home rental contracts is before the court. The court is – in no way – adjudicating the contract rights between the homeowners and their rental management company. The court has already determined that these contracts are not property of the Debtor's bankruptcy estate, and any dispute between the homeowners and the rental management company belongs in state court.

What the court has done is to determine the rights between the Debtor and Timberline and/or Long Run. As a consequence of that determination, the court has found that Pat Herlan, while working as an agent of Timberline, wrongfully took the vacation home rental contracts from her principal, Timberline, when Timberline terminated her employment. The court has restored Timberline to its position as the equitable owner of the rental manager's rights and obligations under the vacation home rental contracts.

Regarding Timberline's and/or Long Run's motion for contempt, the court cannot, at this time, make a determination as to whether Timberline and/or Long Run has been harmed by the Debtor's conduct until such time as Timberline and/or Long Run affirmatively state that they do not recognize the effectiveness of the individual homeowner termination/cancellation notices, and wish to pursue their rights under the contracts against those homeowners. Should Timberline fail to recognize such termination/cancellation rights, it very well may subject itself to potential liability under the rental management contract in another forum. That dispute, however, should it materialize, does not belong in this court inasmuch as it involves contract rights between non-debtor parties over property that is not property of the Debtor's bankruptcy estate. In sum, because Timberline and/or Long Run have not shown harm by clear and convincing evidence, the court will

---

[3] At the hearing on the motion for contempt, Timberline asserted that it wanted the original contracts and the keys so that it could then have a meaningful conversation with the homeowners regarding what Timberline could do for them in its future performance of the vacation home rental contracts. Its counsel stated that in the event the homeowner absolutely did not want to do business with it, Timberline would likely allow the homeowner to walk away from the contracts without further liability.

deny, without prejudice, their motion for contempt.